

COPY

# IN THE COURT OF COMMON PLEAS OF LAWRENCE COUNTY, PENNSYLVANIA

### Civil Division

MARY DICAPRIO, individually and on behalf
of all others similarly situated,

        Plaintiff,

          vs.

MENU FOODS INCOME FUND, MENU
FOODS, INC., MENU FOODS MIDWEST
CORPORATION, MENU FOODS. SOUTH
DAKOTA INC., MENU FOODS HOLDINGS,
INC., WAL-MART STORES, INC., a
Delaware Corporation d/b/a WAL-MART
SUPER CENTER STORE NO. 2287

        Defendants.

Civil Action No: 10534/07

Code:

Filed on behalf of: Plaintiff, Mary DiCaprio,
individually and on behalf of all others
similarly situated

Counsel of Record for this Party:

JOSEPH S. BELLISSIMO, ESQUIRE
Pa. I.D. No.: 70897
BELLISSIMO & PEIRCE
P.O. Box 444, 324 Sims Avenue
Ellwood City, PA 16117
(724) 758-5544

ROBERT N. PEIRCE, III, ESQUIRE
Pa. I. D. No.: 76130
ROBERT PEIRCE & ASSOCIATES, P.C.
Firm I.D. No.: 839
2500 Gulf Tower, 707 Grant Street
Pittsburgh, PA 15219
(412) 281-7220



FILED
APR - 9 2007

**IN THE COURT OF COMMON PLEAS OF LAWRENCE COUNTY, PENNSYLVANIA**

**Civil Division**

MARY DICAPRIO, individually and on behalf
of all others similarly situated,

                    Plaintiff

        vs.

MENU FOODS INCOME FUND, MENU
FOODS, INC., MENU FOODS MIDWEST
CORPORATION, MENU FOODS SOUTH
DAKOTA INC., MENU FOODS HOLDINGS,
INC., WAL-MART STORES, INC., a
Delaware Corporation d/b/a WAL-MART
SUPER CENTER STORE NO. 2287

                    Defendants.

Civil Action No: 10534/07



FILED
APR - 9 2007
PROTH'Y

**NOTICE TO DEFEND**

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice were served, by entering a written appearance personally or by an attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the Complaint or for any claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT

1

HAVE A LAWYER OR CANNOT AFFORD ONE, THEN YOU SHOULD GO TO OR

TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET

LEGAL HELP:

**Lawrence County Lawyer Referral Service**
Lawrence County Government Center
New Castle, PA 16101
(724) 658-2541

YOU MUST RESPOND TO THIS COMPLAINT WITHIN TWENTY (20) DAYS OR A

JUDGMENT FOR THE AMOUNT CLAIMED MAY BE ENTERED AGAINST YOU

BEFORE THE HEARING. IF YOU DO NOT APPEAR FOR THE HEARING, THE CASE

MAY BE HEARD IMMEDIATELY BEFORE A JUDGE. THERE IS NO RIGHT TO A TRIAL

DO NOVO ON APPEAL FROM A DECISION ENTERED BY A JUDGE.



FILED
APR - 9 2007

2

## IN THE COURT OF COMMON PLEAS OF LAWRENCE COUNTY, PENNSYLVANIA

### Civil Division

MARY DICAPRIO, individually and on behalf
of all others similarly situated,

Plaintiff,

vs.

MENU FOODS INCOME FUND, MENU
FOODS, INC., MENU FOODS MIDWEST
CORPORATION, MENU FOODS SOUTH
DAKOTA INC., MENU FOODS HOLDINGS,
INC., WAL-MART STORES, INC., a
Delaware Corporation d/b/a WAL-MART
SUPER CENTER STORE NO. 2287

Defendants.

Civil Action No: 10534/07



FILED

APR - 9 2007

HELEN L. MORGAN
PROTHONOTARY & CLERK OF COURTS

### COMPLAINT

Plaintiff, Mary DiCaprio, through her attorneys, Robert N. Peirce, III, Esquire, Joseph

Bellissimo, Esquire and Robert Peirce & Associates, P.C., on behalf of herself and all others

similarly situated, complains against the Defendants, upon personal knowledge as to herself, and

as to all other matters upon information and belief based upon, among other things, the

investigation made by her attorneys, as follows:

### INTRODUCTION

1.    This is a Class Action seeking the recovery of monetary relief for the Plaintiff, as

well as thousands of consumers who have purchased pet food products made by the Defendants,

Menu Foods, Inc. and Menu Foods Income Fund, and marketed, distributed, and sold by

Defendant, Wal-Mart Stores, Inc., and by other unnamed Defendants.

1

2.    The Defendants' pet food contained a highly toxic substance, and thousands of consumers, like Plaintiff, own or did own pets who have died, suffered kidney failure, or other injury from eating this pet food.

## THE PARTIES

3.    Plaintiff, Mary DiCaprio, is a resident of Lawrence County, Pennsylvania, residing at 225 Glen Avenue, Ellwood City, PA 16117.

4.    The Defendant, Menu Foods Income Fund is an unincorporated open-ended trust established under the laws of the Province of Ontario, Canada, with a principal place of business at 8 Falconer Drive Streetsville, ON Canada L5N 1B1

5.    The Defendant, Menu Foods, Inc., is a New Jersey Corporation located at 9130 Griffith Morgan Lane, Pennsauken NJ 08110.

6.    The Defendant, Menu Foods Midwest Corporation, is a Delaware corporation located at PO Box 1046 ; 1400 East Logan Ave. Emporia, KS 66801.

7.    The Defendant, Menu Foods South Dakota Inc., is a Delaware corporation with a registered agent at C T Corporation System, 319 S. Coteau, Pierre, SD 57501.

8.    The Defendant, Menu Foods Holdings, Inc., is a Delaware Corporation with a registered agent at The Corporation Trust Company, Corporation Trust Center 1209 Orange Street, Wilmington, DE 19801.

9.    The Defendants referenced in ¶¶ 4-8 shall hereinafter be collectively referred to as "Menu Foods." Menu Foods manufactured the pet food at issue in this action for the other co-Defendants, as well as for a host of other makers, marketers and sellers of pet food. Menu Foods

2

claims to be the leading North American private-label manufacturer of so-called wet pet food products sold by supermarket retailers, mass merchandisers, pet specialty retailers and other retail and wholesale outlets. In 2006, the Menu Foods produced more than one billion containers.

10.    The Defendant, Wal-Mart Stores, Inc. (hereinafter "Wal-Mart"), is a Delaware corporation, located at 1515 Market Street, Suite 1210, Philadelphia, Pennsylvania 19102. Wal-Mart distributes the pet products at issue, manufactured by Menu Foods under various Wal-Mart proprietary brand names, including "Special Kitty" brand cat food.

## JURISDICTION AND VENUE

11.    Jurisdiction of this matter is properly before this Court pursuant to 42 Pa. C.S.A. §931, and this Court may exercise jurisdiction of this Defendant pursuant to 42 Pa. C.S.A. §5301 and 42 Pa. C.S.A. §5322.  Venue is proper in this action pursuant to Pennsylvania Rule of Civil Procedure 1006, in that the causes of action complained of arose in Lawrence County, and many of the transactions and occurrences underlying this action took place in Lawrence County.

## FACTUAL ALLEGATIONS

12.    Defendant, Menu Foods Income Fund, announced, on March 16, 2007, the recall of "cuts and gravy" style pet food in cans and pouches, which it manufactured between December 3, 2006 and March 6, 2007, at two of its United States facilities, under private label for a large variety of pet food brands purchased by Plaintiff and the other Plaintiff Class members, including designated Wal-Mart Brand pet food products such as "Special Kitty"— herein, the pet food products at issue or products at issue.

3

13.     The Menu Foods Defendants have announced that the timing of this production coincides with the introduction of an ingredient from a new supplier. Menu Foods has received complaints about the impact on the renal health of the pets consuming the products at issue manufactured during this time period.

14.     On or about March 6, 2007, Plaintiff purchased pet food products at issue, including, without limitation, various flavors and varieties of Special Kitty brand moist cat food, which was specifically purchased at the Wal-Mart Super Center Store No. 2287, 2501 West State Street, New Castle, PA 16101.

15.     In the following days, Plaintiff's pet cat, Autumn, ate one or more of said products that Plaintiff purchased. Plaintiff noticed that Autumn gradually stopped consuming the food, and instead began consuming only the moisture on the surface of the food. Thereafter, on March 19, 2007, Plaintiff noticed that Autumn was sick.

16.     Veterinary tests performed on March 20, 2007 revealed that Autumn had an elevated creatinine level of 5.7, with 1 to 2.4 being the normal range. This elevated level is indicative of impaired or damaged renal/kidney function. Plaintiff left Autumn at her veterinarian's office for observation and dialysis treatment for three days. Plaintiff then took Autumn home and has been administering subcutaneous injections to Autumn every two days.

17.     As a result of harm to her health, Autumn will have to undergo further medical monitoring, and may require treatments for the rest of her life.

18.     To date, Plaintiff has incurred "pet hospital" and veterinarian expenses for Autumn, arising out of her consumption of Defendants' pet food products at issue, of approximately $5000.

4

19.    The Defendants have admitted that cats and dogs in the United States have become sick and developed signs of kidney failure, including loss of appetite, vomiting, and lethargy from consuming its pet foods at issue, and has advised consumers to stop using the affected products immediately and seek assistance of a veterinarian where appropriate.

20.    The pet food products at issue are defectively designed and made, and are poisonous or unreasonably dangerous to pets; due to the ingredient composition of said products, the products are not usable for their intended purposes, and when used, cause a significant risk of bodily harm, including severe or fatal bodily harm (such a renal or kidney failure, or death) to the pet.

21.    Said defect and inherent dangers existed in the pet food products at issue at the time Plaintiff purchased said products, though she could not discover same at the time of purchase, the dangers inhered in the products at the time the products left the possession of the manufacturer, distributor, marketer and seller of said products.

22.    Defendants had a duty to design, manufacture, distribute, market and sell a safe product, and a duty to warn or disclaim any potential dangers which derive from unreasonable dangers posed by the product.

23.    Defendant Wal-Mart misrepresented, on the packaging of pet food products at issue which they caused to be marketed and sold to Plaintiff and thousands of other consumers, that said products were, indeed, pet food, were suitable for consumption by pets, and in fact were "premium" pet foods.

24.    Said representations on the product packaging, prominently marketed to retail store isles, are advertisements, announcements, statements or representations containing

assertions, representations or statements of fact which are untrue, deceptive and/or misleading, in violation of 73 P.S. §§ 201-1, *et seq.*, and similar state statutes.

25.    In fact, said products are not suitable for consumption by pets, are not properly considered or presented as pet food, are not a "premium" pet food product, are not fit for their intended purpose, are dangerous to the health of the pet and could lead to the pet's substantial physical injury or death, are really pet food imitations, and contain an ingredient composition that causes the preceding allegations in this paragraph to be true.

26.    Wal-Mart caused the above-mentioned statements and misrepresentations to be featured on the packaging of their products at issue, which Plaintiff and thousands of other consumers viewed at the time of purchase, with the intent to increase the consumption of, the sale of, or to induce the public to purchase, of their Wal-Mart brand name pet products at issue, such as Special Kitty.

27.    Absent Defendants' untrue, deceptive, or misleading statements and representations, Plaintiff and thousands of other consumers. For instance, they would not have been induced to purchase, nor would they have purchased, the Wal-Mart brand name pet products at issue, such as Special Kitty.

28.    Defendants' above-described statements and misrepresentations about the Wal-Mart brand name pet products at issue, such as Special Kitty, have the capacity or tendency to deceive or mislead, and in fact proximately caused damage to Plaintiff and thousands of other consumers by inducing them to buy a product they otherwise would not have bought.

6

## CLASS ACTION ALLEGATIONS

29.    This action is brought by the Plaintiff on her own behalf and as a Class Action pursuant to Pennsylvania Rule of Civil Procedure 1702, on behalf of all persons and entities who purchased the pet products at issue in the Commonwealth of Pennsylvania, defined herein as "cuts and gravy" style pet food in can or pouch, manufactured by Menu Foods, between December 3, 2006 and March 6, 2007, including products ultimately sold or marketed by Wal-Mart and other pet food brands. Excluded from the Class are the officers and employees of each of the Defendants, Plaintiff's counsel, and any judges or justices presiding over this action.

30.    Plaintiff also brings this action on behalf of a Subclass of all persons and entities who purchased pet products at issue caused to be distributed, marketed and/or sold by Wal-Mart — herein, the "Wal-Mart Subclass."

31.    Plaintiff has met the requirements of Rules 1702 and 1708 of the Pennsylvania Rules of Civil Procedure.

32.    Plaintiff does not know the exact size of the Class and Subclasses, since this information is largely in Defendants' exclusive control. But based on the nature of the trade and commerce involved, Plaintiff believes that the Class and Subclass each numbers in the thousands and that the members of each class are geographically dispersed throughout the State of Pennsylvania. Therefore, joinder of the members of the Class or each Subclass would be impracticable, and class treatment is the superior method for fairly and efficiently adjudicating this controversy.

33.    Plaintiff's claims are typical of other Class and Subclass members' claims

7

because all Class and Subclass members were injured through the uniform misconduct described herein.

34.     Common legal and factual questions among and within the respective classes exist, such as:

  a.     Whether the respective Defendants caused to be manufactured, distributed, marketed, and sold, the pet food products at issue;

  b.     Whether the pet food products at issue are unreasonably dangerous, unfit for pet consumption, and/or not as represented by Wal-Mart; and

  c.     Whether Defendants' conduct caused injury in fact to Plaintiff and the members of the Plaintiff Class.

35.     Plaintiff can and will fairly and adequately represent and protect the respective Plaintiff Class (including Subclass) Members' interests, and has no interests that conflict with or are antagonistic to the Plaintiff Class (or Subclass) Members' interests. One or more of Plaintiff's attorneys are experienced and competent in class action litigation.

36.     Class certification of the respective, alternative classes is appropriate under Rule 1708 of the Pennsylvania Rules of Civil Procedure because a class action is the superior procedural vehicle for the fair and efficient adjudication of the claims asserted given that:

  a.     Common questions of law and fact overwhelmingly predominate over any individual questions that may arise among or within the respective classes and, consequently, enormous economies to the court and parties exist in litigating the common issues, for each class, on a class-wide basis instead of on a repetitive individual basis;

  b.     Class treatment is required for optimal deterrence against, and compensation for, Defendants' wrongful conduct alleged herein; and

  c.     The aggregate volume of the claims of the Plaintiff Class, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost-effective basis, especially when compared with repetitive individual litigation, and no unusual difficulties are likely to be encountered in this

8

class action's management in that all legal and factual questions are common to each class.

37.    Plaintiff's claims are typical of the other Plaintiff Class and Subclass members' claims because Defendants injured Plaintiff and the respective Class and Subclass members in the same manner.

38.    Class certification is appropriate pursuant to Rule 1708(3) of the Pennsylvania Rules of Civil Procedure because prosecution of separate actions would create a risk of adjudication with respect to individual members of the respective classes, which may, as a practical matter, dispose of other class members' interests who are not parties to the adjudication or which may substantially impair or impede individual Class Members' ability to protect their interests. Separate actions prosecuted by individual Class Members would also create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendants.

39.    Class certification is appropriate under Rule 1708(b)(2) of the Pennsylvania Rules of Civil Procedure because Defendants have acted on grounds generally applicable to the respective Plaintiff Class and Subclass members.

## COUNT I
## CONSUMER PROTECTION

40.    The Plaintiff herein incorporates the preceding paragraphs as if more fully set forth herein.

41.    This claim arises under 73 P.S. §§ 201-1, *et seq.*, otherwise known as the "Pennsylvania Unfair Trade Practices and Consumer Protection Law" (hereinafter "UTPCPL").

42.    Unfair methods of competition and unfair or deceptive acts or practices are declared unlawful under the UTPCPL at 73 Pa. C.S.A. § 201-3.

43.    Defendants violated the UTPCPL by committing one or more of the following unlawful acts, as defined at 73 Pa. C.S.A. § 201-2(4):

    a.    "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;"

    b.    "Representing that goods or services are of particular standard, quality or grade, or that goods are of a particular style or model, if in fact they are of another;"

    c.    "Advertising goods or services with intent not to sell them as advertised;" and,

    d.    "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."

44.    Defendant's actions, as set forth herein, evidence a lack of good faith, honesty in fact, and observance of fair dealing so as to constitute unconscionable commercial practices, in violation of the UTPCPL.

45.    Defendant acted willfully, knowingly, intentionally, unconscionably and with reckless indifference when it committed these acts of consumer fraud.

46.    As a result of the acts of consumer fraud described, Plaintiff and the Class Members have suffered ascertainable loss in an amount equal to the retail value of their pets and/or their out-of-pocket expenditures for Special Kitty pet food and other pet food manufactured by Menu Foods, plus the consequential damages that they have incurred and will continue to incur for veterinary services, and any other consequential or incidental damages resulting from Defendants' misconduct.

## COUNT II

### NEGLIGENCE

47.     The Plaintiff herein incorporates the preceding paragraphs as if more fully set forth herein.

48.     The Menu Foods Defendants designed and manufactured the pet products at issue.

49.     Defendant Wal-Mart distributed, marketed and sold those pet products at issue that were sold under their brand names, e.g., Special Kitty.

50.     Each of the Defendants breached their respective duties and duties of care, e.g., in designing, manufacturing, distributing and selling pet products at issue that are reasonably safe for their intended purposes and so as not to injure users of the products, especially when the products are used in the same manner prescribed by the maker, designer, distributor or seller, as well as their respective aforementioned duties.

51.     Defendants' respective breaches of the aforementioned duties in the course of making, distributing, marketing and selling the pet products at issue to Plaintiff and the Class caused each of them actual and proximate damage. Plaintiff and the Class, who purchased said pet products at issue, were damaged as a result thereof.

### COUNT IV

### STRICT LIABILITY

52.     The Plaintiff herein incorporates the preceding paragraphs as if more fully set forth herein.

53.     Each of the Defendants proximately caused pet products at issue to be placed into

11

the stream of commerce and purchased by Plaintiff and other members of the Class.

54.     The Defendants breached their aforementioned duties to Plaintiff and the Class,

55.     Plaintiff and the Class were damaged as a result.

**COUNT V**

**UNJUST ENRICHMENT**

56.     The Plaintiff herein incorporates the preceding paragraphs as if more fully set forth herein.

57.     The revenues and profits flowing to each of the Defendants from the sale of the pet products at issue inured to the benefit of the Defendants and each of them.

58.     Alternatively, as a result of the Defendants' deceptive and unfair practices outlined above, Plaintiff and other Members of the Wal-Mart Subclass and Pennsylvania Subclass purchased pet food products at issue, which were less than the product advertised and represented and which were not fit for their ordinary and intended purpose.

59.     The untrue, deceptive, and misleading sales and marketing practices described in this Complaint have enriched each of the Defendants at the expense of Plaintiff and the putative Class Members.

60.     Plaintiff and other Members of the Class are entitled to restitution, and disgorgement of each of the Defendants' ill-gotten gains, as a result of the Defendants' unjust enrichment.

12

## COUNT VI

## BREACH OF IMPLIED WARRANTY

61.    The Plaintiff herein incorporates the preceding paragraphs as if more fully set forth herein.

62.    As a merchant in the business of selling pet food to consumers for remuneration, the Defendant Wal-Mart impliedly warrants that all of the goods (pet food) which it sells are fit for animal consumption.

63.    As a merchant in the business of selling pet food to retailers, such as Wal-Mart, for remuneration, the Menu Foods Defendants impliedly warrant that all of the goods (pet food) which it sells are fit for animal consumption.

64.    The Plaintiff and Class Members purchased the pet products at issue directly from the Defendant Wal-Mart at its Newcastle, Pennsylvania location, as well as numerous other locations across the nation.

65.    The Defendant Wal-Mart purchased said pet products at issue directly from the Menu Foods Defendants.

66.    The goods purchased by the Plaintiff and Class Members were not fit for animal consumption.

67.    As a result of the above, the Defendants breached the implied warranty of merchantability which it owed to the Plaintiff and Class Members.

13

## COUNT VII

### BREACH OF EXPRESS WARRANTY

68.    The Plaintiff herein incorporates the preceding paragraphs as if more fully set forth herein.

69.    Defendant Wal-Mart expressly warranted that the pet products at issue were fit for animal consumption.

70.    The Menu Foods Defendants expressly warranted that the pet products at issue were fit for animal consumption.

71.    The Plaintiff and Class Members purchased the pet products at issue directly from the Defendant Wal-Mart at its Newcastle, Pennsylvania location.

72.    The Defendant Wal-Mart purchased said pet products at issue directly from the Menu Foods Defendants.

73.    The goods purchased by the Plaintiff and Class Members were not fit for animal consumption.

74.    As a result of the above, the Defendants breached their express warranties which it owed to the Plaintiff and Class Members.

### PRAYER FOR RELIEF

WHEREFORE, as to all causes of action, Plaintiffs respectfully request relief as follows:

1.    That this Court determine and adjudicate the rights and liabilities of the parties;

2.    That this Court certify a Class and Subclasses of similarly situated

14

Plaintiffs to proceed against the Defendants, and appoint Plaintiffs' counsel as Class Counsel to prosecute the litigation;

3.   That this Court order preliminary and permanent injunctive relief enjoining and restraining Defendants from further using any false or misleading representations that are likely to, or have a tendency to, deceive customers and consumers, or to misrepresent the price, nature, characteristics or qualities Defendants' products or services;

4.   That this Court order Defendants to undertake a corrective advertising campaign to rectify the confusion, deception, or misrepresentations caused by their illegal actions;

5.   That this Court determine that the Defendants were unjustly enriched and that restitution is appropriate;

6.   That this Court require each Defendant to account for all revenues or profits improperly received as a result of the aforementioned conduct, enjoin each Defendant from dispersing said monies, and impose a constructive trust on said monies.

7.   That this Court order an award of special damages to Plaintiff, Class, and Subclass Members in an amount to be determined at trial;

8.   That this Court order an award of actual damages to Plaintiff, Class, and Subclass Members, and all other damages recoverable under the law in an amount to be determined at trial;

9.   That this Court order an award of attorney's fees, expenses, and costs to Plaintiff, Class, and Subclass Members, as allowed by law; and,

10.  Such other further relief as the Court may deem just and equitable.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully Submitted,

Counsel for Plaintiff

By: _____

JOSEPH S. BELLISSIMO, ESQUIRE

4-5-07
_____
Dated

By: _____

ROBERT N. PEIRCE, III, ESQUIRE

15